Johnston, Ch.
delivered the opinion of the Court.
John H. Robert and Wm. H. Robert, the executors of McKenzie, converted part of their testatrix’s goods into money, and died. Chovin became the administrator de bonis non of McKenzie, and the personal representatives of the deceased executors came to an account with him touching the said executors’ administration; paid him the balance found upon such accounting, and took his acquittance and discharge.— The legatees of McKenzie subsequently filed their bill, praying that the representatives of the executors be decreed to account to them for the same matter: to which the latter pleaded the account and settlement with Chovin and his discharge in bar; and the question has been sent from the Court of Chancery to this Court., for its judgment, whether the facts pleaded are a sufficient bar to the account prayed.
Neither the correctness nor the fairness of the settlement, above stated, is questioned by the legatees, in their bill, and the transaction is binding on them, if Chovm, the administrator de bonis non, was competent to demand the account and receive the money. The question, then, is narrowed down to the competency of Chovin to do these acts: and the opinion of this Court is, that he was fully competent. This opinion has not been formed without an attentive consideration of the numerous authorities, English and American, that have been quoted in argument; but it must be acknowledged that we have been more influenced by the uniform and recog *411 nized practice in our own State, than by any other consideration. The practice of allowing the administrator de bonis non to demand and recover the proceeds of specific assets converted by his predecessor, has prevailed extensively among us, and was never questioned, until Smith vs. Carrere. And. this, of itself, would be a sufficient reason, in the eye of this Court, for the judgment it now delivers. For the loss and disappointment to parties who have made settlements upon faith in the prevailing usage would be incalculable, if a different rule were suddenly adopted. But the practice to which I have referred is not only supported by its antiquity and prevalence in this State, but is recommended by considerations of its superior convenience. If, therefore, it were less supported than it is by principle and authority, the Court would feel very reluctant to overrule and abrogate it. But it is not without foundation in principle and authority, as I shall endeavor to shew. It is admitted on all hands that, as between the administrator de bonis non and the representative of the deceased executor, the former is entitled to all the specific assets of the testator, unconverted by the executor. They are his by legal right. On the other hand, it is admitted that the proceeds of converted assets go, by legal right, to the representative of the executor, to be administered by him as parcel of the executor’s estate, and not to the administrator de bonis non of the first testator. But the question is, 1. Whether the representative of the executor is not to answer out of his estate, for all the trusts upon which the executor held the money: and, 2. Whether the administrator de bonis nonmwy not demand that account.
We are now in Equity, and must determine these questions according to the principles and practice of that jurisdiction; and it is' conceived that whether we look to the one or the other, the answer must be in the affirmative. From the time that Equity assumed the control of executors, upon the ground that they are trustees of the assets which come to their hands, it lias never been satisfied with any rule less extensive than this: that the trustee shall not be allowed to retain any benefit to himself, in the subject matter of the trust, in derogation of the rights of those recognized by the law, for the time being, or by the court, as having an interest in the trust property. The executor’s liability or accountability has always been co-extensive with the rights of those having an interest in the trust, as those interests are recognized or ascertained by the law existing at the time. To apply this principle: as is said in Smith vs. Carrere, 1 Rich. Eq. 125, “before the Statute of Distributions the executor was *412 entitled to the whole personal estate, subject to the payment of debts and legacies. When, therefore, he sold or converted any part of it, this was understood to be a seizing or taking possession in his individual right, ■ as an executor may now assent to his own legacy. The goods were said to be administered, and no longer in his possession as executor.” . The amount of what I have quoted is this: that before the Statute the executor, being exclusively entitled to the surplus, was not accountable for it; and in this state of the law, his conversion was an act of administration, so far as it operated an assent of the surplus to himself, as legatee. But the case is yet to be produced, to the effect that if he converted the. whole estate, he had entirely administéred it, or was not accountable for debts or legacies. But after the surplus was taken from the executor, it would bé very surprising if the court had failed to apply its own principle, and. to vindicate the rights of those to whom the surplus was given, in the same way as it had previously interposed for creditors or legatees — by compelling an account.
These observations are intended for a specific purpose. — r They may serve to exhibit the relation which an executor bears to the proceeds of goods converted by him. He holds them in trust. The legal right to the money is in him, but he is accountable, as a trustee, in respect to it. Although, in cases where the party interested in it may proceed against him at law for his devastavit, it is regarded as a debt; yet it is a debt contracted by a breach of trust: and, where Equity has jurisdiction of the case, it looks entirely to the fiduciary character of the executor, and grants its remedy by compelling a full execution of all the trusts reposed in him. His conversion or devastavit will not be regarded as an administration, but just the opposite. Strangers, to whom he may have sold the goods in his hands for a fair equivalent, and without notice, will hold them by the legal title transferred by the executor, but the executor, who must necessarily receive the price with notice of the trusts attached to the things sold by him, will be held a trustee, as to the price received. And so of the executor’s representative. He must answer, out of his testator’s estate, for his testator’s breach of trust. As is said in Prince vs. Morgan, 2 Cha. Ca. 217, cited in Smith vs. Carrere, 1 Rich. Eq. 127, “Although, by the common law, when the executor wastes, his executor shall not be liable, because it is a personal wrong, it is otherwise here?
But these observations need not be protracted. It is admitted on all hands that the representatives of the executors, Jno. H. and Wm. H. Robert, were accountable in equity for *413 the money into which the executors converted the property of their testator. The only contest is whether they were accountable to the administrator de bonis non, or only to the legatees. I proceed, therefore, to the second inquiry. 2. Whether the administrator de bonis non might not demand the account. One of the arguments for his incompetency to do so, is derived from the phraseology of the statute 30 Ch. 2, ch. 7, recited in the decree : and that it may not incumber the decision, I shall take it up, at once, and endeavor to dispose of it. This statute says, A. D. 1669, “Whereas, the executors and administrators of such persons who have possessed themselves of considerable personal estates, of other dead persons, and converted the same to their own use, have no remedy,” (are not liable) “by the rules of the common law, as it now stands, to pay the debts of those persons whose estate hath been so converted by their testator or intestate, which hath been found very mischievous, and many creditors defeated of their just debts, although their debtors left behind them sufficient to satisfy the same, with a great over-plus. For remedy whereof, lie it enacted, that all and every, the executors and administrators of any person or persons who, as executor or executors in their own wrong, or admintrators, shall, from and after the first day of August next ensuing, waste or convert any goods, chattels, estate or assets, of any person deceased, to their own use, shall be liable and chargeable in the same manner as their testator or intestate would have been, if they had been living.” This statute has been extended to the representatives of rightful executors or administrators, by the stat. 4 and 5 W. & M. ch. 24, as stated in the decree. In reference to this statute ■ of Charles it has been objected: “ If the administrator de bonis non might have had an account, and recover for the assets wasted or converted, it could not be said that the creditors of persons whose estates had been wasted, were without remedy. He would be bound to pay their debts; and would be personally liable if he did not.” 1 Rich. Eq. 126. But the statute, as I conceive, does not assert that the creditors were without remedy. The obvious import of the passage is that the representatives of the devastating executor were not liable at common law — or (if it be a more agreeable interpretation) that the creditors of the was led estate were without remedy at commonlaw in the case stated in the statute. The statute speaks altogether of the creditor’s remedy at law, and intends to extend it to the case described by the legislature ; and this it might well do, though there existed a well recognized remedy for the creditor, by circuity, through the administrator de *414 bonis non in equity. We shall better understand this if we attentively consider the law applicable to the case put in the statute, as it stood before the statute was passed.
In the lile of the devastating executor the creditor of his testator had a remedy at law against him. By meddling with the goods of thedebtoi, he made himself his executor, and liable to the creditor as such. The course was for the creditor to sue him as executor, and establish his demand against the deceased debtor. The judgment went for the whole debt ¿ to be satisfied de bonis testatoris, so far as the executor had come to the possession of such goods. But if the executor did not satisfy the judgment to this extent, the creditor might, by a proper proceeding, suggesting a devastavit, entitle himself to a judgment against him personally, and to be levied de bonis propriis, to the extent of his devastavit. This was the creditor’s remedy at law. But if the devastating executor died either before or after the creditor obtained his judgment de bonis testatoris, but before obtaining judgment against the executor himself, the creditor had no remedy at law (as the statute asserts) against his representative.
He could not sue this representative upon his original demand, because he did not represent the original debtor, and was therefore not the proper person to defend the action, and if judgment had already been obtained, establishing the debt, yet this representative was not liable to be sued for it. His function was to pay the debts oi his testator. But' unless judgment had been obtained against the latter, in his lifetime, he owed no debt, in the case stated, and therefore his representative was not answerable at law out of his estate. And as to the devastavit, it was regarded by the law courts as a tort which died with the wrong doer. The statute gives the ■ creditor a remedy at law in these circumstances ; in which jurisdiction he was in like circumstance (as the statute cor-, rectly asserts) without remedy, and the remedy given is very limited. Unless he has established his original demand in the lifetime of the first executor, he cannot bring suit on it against the executor’s administrator, because he does not represent the first testator, and is therefore not the proper person to contest claims upon his estate. But if he has established his demand in the time of the executor, he may (perhaps, without having proceeded to judgment against the executor himself, though this has been doubted,) go against his estate in the hands of his representative, on the ground of the executor’s devastavit.
This is the extent of the creditor’s remedy at law: a remedy still insufficient where the debt remains to be established, *415 in which ease he needs the aid of the administrator de bonis nob to recover the funds necessary to satisfy his demand.
It is a complete misapprehension to suppose that, because the statute gives the creditor a direct remedy, under special circumstances, he was wholly without remedy through his trustee, before the statute was passed: or that when the statute expressly declares that his defect of remedy was at law, it meant that he had none in equity. Having disposed of this objection, I proceed to enquire more directly into the capacity of an administrator de bonis non to demand an account of wasted assets from the representative of the devastating executor.
In the case before us, it appears that Wm H. Robert was the survivor of the two executors, and, according to all the authorities, he might have called the representative of his deceased companion t<f account for all the funds, converted and unconverted, in his hands at his death. It would be a surprising anomaly if,the same law which would have entitled him to this account as representative of the testator, should, owing to the mere accident of his dying before the account was taken, deny to the administrator de bonis non (equally a representative of the testator) the right to demand the same account.
There is a great variety of ways in which this question may be tested: and as an examination of them all would draw out this opinion to a very inconvenient length, I shall select only one or two.
It is admitted that the administrator de bonis non is entitled to all the unconverted goods of the testator. Suppose that without knowing that any of them had been converted, he had called for an account and delivery of these goods.— They were held in trust by his predecessor ; and he, the successor, is entitled to them to fulfil the trusts now devolved on him. Would it be any answer to a trustee legally entitled to the specific trust property, to tell him that his right is defeated by the breach of trust of the former trustee, and that, owing to that breach of trust, he shall have neither the trust property nor its equivalent ?
Another view arises from the position which this Court always assigns to the representative of the testator, in all suits for the recovery and distribution of his estate. Unless under very special circumstances, as where he who is to be rendered responsible is entitled to the administration, and will not administer, and other special cases,- — equity never undertakes to get in or destribute an estate, unless a representative of the testator, alike representing him as creditor and as debtor, and *416 standing as a trustee for all the parties interested in his property, is before the Court. And where the trust has been divided, or there has been a succession among the trustees, unless the whole fund has been placed in the hands of the existing representative before the Court, all the other trustees must be brought in with him, so that, through him, the funds may be assigned to their ultimate destination, in complete •satisfaction of the interests of all the parties, and in complete execution of all the trusts recognized in the case. Debts and legacies, and all other duties of administration, are made to centre eventually in him: and if by circuity, any other person standing in such fiduciary relation as enables the Court to take notice of him, is to be made responsible, that other is to be placed by the side of the personal representative, to enable him to meet and discharge the ultimate responsibility. Thus •equity treats the administrator as an mfity, and disposes of the estate in one suit. To this effect are some of the cases quoted in the decree. To these may be added the case of Tyler v. Bell, (2 Mylne and Craig, 89;) and Ponel v. Graham, (1 Hare Rep. 482.) These were both of them cases in which parties claiming as distributees or legatees attempted to obtain satisfaction of their interests, without the intervention of a personal representative of the decedant. But it was adjudged that without his intervention the suit could not proceed.— To the same point may be cited our own cases of Davis v. Rhame (1 McCord Ch. 195;) Gregory v. Forster, (Ib. 324;) Farley v. Farley, (Ib. 506;) Bradford v. Felder, (2 McC. Ch. 170;) and other cases. See also, Daniel’s Practice, 246; and Holland v. Prior (1 Mylne and Keene, 237.) If a personal representative is a necessary party in suits by the legatees, (as unquestionably he is, except as in Smith v. Carrere, where the existence of debts is negatived, and like special caaes,) he must be competent to receive the fund distributable to legatees, wherever there is a possibility of debts remaining to be paid.
Thus far, we have proceeded on general reasoning. Depending upon the inference from the preamble to the statute of Charles, (which I think has been answered,) and upon the words by which an administrator de bonis non is commissioned, and upon some few vague generalities, a member of the Court, in Coleman v. McMurdo (5 Rand. Rep. 58) demanded “what is there on the other side? Not,” he continues, “one single case, not the dictum of a single judge, not the assertion of an elementary writer, that the administrator de bonis non, either at law or in equity, can support an action, or file a bill for account, against the representative of a delinquent executor or administrator.”
*417 This would have been more impressive if there had been found either case, dictum or elementary authority for the incapacity of the administrator de bonis non to sustain suits or actions in such cases.
But what shall we say to the case of Tyler vs. Bell, (2 M. & C. 89,) already referred to, for another purpose? The husband of an administratrix was considered to have possessed himself of a large sum of money due to the estate, and to have become liable to make gdod to the next of kin of the intestate, the assets received. The husband,.thus liable as administrator, died, having constituted his wife, (the administratrix,) his executrix, who received of his assets more than sufficient to answer the demands of the next of kin: Held that this was payment to the personal representative of the first decedent, and discharged the husband. And one of the illustrations with which the Lord Chancellor inforced his judgment, is this, “Suppose” (says he) “there had been two administrators, or two executors of M. M. Moscrop, and the one had died, and the bill had alleged that the representative of the deceased executor had accounted with the surviving executor for all the estate which his testator had received.— This (he adds) is a common allegation, to avoid the necessity of making the executor of a deceased executor a party.— By Mrs. Tyler’s receiving assets of Mr. Tyler, sufficient to pay what he had received of M. M. Moscrop’s estate, the whole of that estate is at home, in the hands of the administratrix of M. M. Moscrop.”
In Phelps vs. Sproule, (4 Sim. 318,) it appeared Phelps made his will, and appointed J. S. Oliver his executor.— • Without renouncing or proving the will, J. S. Oliver received assets of Phelps. J. S. Oliver then died, having appointed Betsey Oliver his executrix, and she also administered to the estate of Phelps. Betsey Oliver then died and appointed Sproule her executor, who proved her will; and Prior took out administration to Phelps, the first testator. The bill was, among other things, for an account of Phelps’s personal estate, possessed by J. S. and Betsey Oliver, and that the purchase money of the freehold estate, which Phelps had contracted for, might be paid out of it. Sir Lancelot Shadwell said, “ The right to call for an account fell upon Prior, Avho was the administrator de bonis non of Phelps.”
The same case, in a subsequent stage of it, is reported (1 Mylne & Keene, 231.) The defendant Sproule, put in a plea in bar, which in substance stated “ that he, the said Sproule, had come to a full, true and final account with Prior, in respect to the personal estate and effects of Phelps, come to *418 the hands of J. S. Oliver, Betsey Oliver and himself, Sproule; “ and that on taking and finally balancing such account, it appeared, as the fact was, that there was justly and truly due to the estate of Phelps the sum of £471 7s. Id. and no more, which he, Sproule, duly paid to Prior, and took his discharge,” &c. The Vice Chancellor allowed the plea, and the plaintiff appealed. The Lord Chancellor reversed the decision, not on the ground, however, that the release of the administrator de bonis non was not valid, if fairly obtained, but on the special ground, that it was charged in the bill to have been obtained by fraud and collusion, which was not denied by the plea. The plea was accordingly amended; and the plaintiff declined to prosecute the suit further. It can hardly be pretended that the account in this case did not involve, at least to some extent, the proceeds of converted assets. We have few express adjudications of our own upon the subject. That of Gill vs. Douglas, quoted in the decree, is one, however, precisely to the point.
In Easterly vs. Thompson, (Rice Rep. 346,) administration had been taken out on the estate of Duncan McCol. The administrator died, and administration was taken out on his estate, and administration de bonis non granted on the estate of Duncan McCol. The suit was prosecuted by creditors of Duncan. The Court said, “ Upon the death of an administrator his administrator is not accountable to the creditors of the first intestate. Their remedy is against the administrator de bonis non — whose duty it is to have an account from the administrator of the first administrator.” The case shews a devastavit on the part of the first administrator. In Wright vs. Davis, (2 Hill Ch. 567,) an administrator, after converting the assets, died, and administration was taken out on his estate. This latter administrator held the funds of his intestate for several years, when an administrator de bonis non to the first intestate was appointed, who, in conjunction with the distributees of the first intestate, demanded an account. In taking the account, the point was made and determined, that the administrator of the administrator was not liable for interest until the administrator de bonis non was appointed; inasmuch as before his -appointment, there was no person legally authorized to receive the money and give a discharge.
I have not time to go over the eleven reported cases, cited in argument, in which the account for converted assets was demanded by the administrator de bonis non, and decreed against the representative of the first executor or administrator, without objection. This is evidence of the settled professional opinion and practice in this State. The case before *419 us is evidence of the same opinion and practice. Every one of the persons engaged in making the settlement for the parties belonged to the bar. The recollection of every Judge on this bench is stored with instances of such settlements.' It was not considered safe for the executor’s representative to settle with any one else than an administrator de bonis non. The practice extends back beyond our own times, and within our time has been as nearly uniform as any practice can be.
When a decision is called for, which, when made, can operate only prospectively, the Court may feel greater liberty in departing from opinions previously entertained. But when the adjudication is to operate retrospectively, it becomes us to pause, especially when the interests at stake are of great extent. When we take into consideration the number of settlements which have taken place similar to those before us — involving large estates — and in the preservation of which settlements not only the trustees themselves, but their sureties, are interested, it is believed that few decisions which the Court could make would be fraught with greater mischief than one invalidating the settlement before us.
And this is not the only consideration of a prudential character. As stated in the decree, the prevalent practice is recommended by its convenience. In this State, where there is a prescribed order of administration, and creditors of the same rank are to be paid rateably, it would be hardly possible for trustees, answering for different parts of an estate, and acting separately, to so administer it that each trustee should be safe, and each creditor get his exact proportion, especially in cases of insolvent estates. The remedy is, that the whole estate be concentrated in one representative, and be distributed through him. We have not sufficient evidence that our practice is erroneous to induce us to change it, and deprive ourselves of its advantages.
It is ordered that it be certifind to the Court of Appeals in Equity, as the opinion of this Court, that the account and settlement between the representatives of the executors of McKenzie and Ghovin, the administrator de bonis non of said McKenzie, pleaded as a bar to the account sought in the bill against the said representatives, is a sufficient bar thereto.
Dunkin, Ch. Caldwell, Ch. O’Neall, J. Wardlaw, J. Frost, J. Withers, J. and Evans, J. concurred.
Richardson, J. doubted.

Decree affirmed.

*420 On the opinion of the Court of Errors on the point submitted being certified back, the Court- of Appeals in Equity-pronounced the folio-wing decree.
Johnston, Ch.
The Court of Errors having, in answer to the question in this case, sent to them by this Court, certified their opinion to this Court, that the bar set up in the answers of Ann M. Robert and Ulysses M. Robert is sufficient to preclude the account prayed in the bill against them ; and this Court being satisfied with the decree upon all the points adjudged by the Chancellor—
It is ordered that the decree be affirmed, and the appeal dismissed.
Dunkin, Ch. and Caldwell, Ch. concurred.

Deorée affirmed.